UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **OCALENE MICHELLE JONES** | \* | **DOCKET NO. 07-0875** |
| **VERSUS** | \* | **JUDGE JAMES** |
| **MICHAEL J. ASTRUE,<br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION** | \* | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

Ocalene Michelle Jones filed the instant applications for Disability Insurance Benefits and Supplemental Security Income payments on November 18, 2003. (Tr. 63-65, 235-237). She alleged disability since June 1, 2001, due to lower leg numbness and knee, ankle and back pain. (Tr. 63, 77). The claims were denied at the initial stage of the administrative process. (Tr. 37, 49-52, 238). Thereafter, Jones requested, and received a May 4, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 239-250).[1] In a November 21, 2005, written decision, the ALJ determined that

---

[1] The ALJ held a supplemental hearing on July 28, 2005. (Tr. 251-256).

1

Jones was not disabled under the Social Security Act, finding at Step Four of the sequential evaluation process that she was able to return to past relevant work as a college financial aid clerk. (Tr. 19-20). Jones appealed the adverse decision to the Appeals Council. However, on March 20, 2007, the Appeals Council denied Jones's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On May 23, 2007, Jones sought review before this court. She alleges the following errors:

(1) the ALJ's reasons for discounting Dr. Cox's medical opinion are not supported by substantial evidence;

(2) the ALJ failed to document the psychiatric review technique;

(3) the ALJ's assessment of plaintiff's mental impairment is internally inconsistent;

(4) the ALJ failed to make explicit findings regarding the mental requirements of plaintiff's past relevant work, and

(5) the ALJ's Step Four determination is not supported by substantial evidence.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

    (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

    (4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

Issue 1:

The ALJ found at Step Two of the sequential evaluation process that Jones suffered from severe impairments of: bipolar disorder, in remission; osteoarthritis of the knees and ankles; osteoporosis of the lumber spine; and obesity. (Tr. 16, 19). The ALJ concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (16, 20).

The ALJ next determined that Jones retained the residual functional capacity to perform a wide range of light work, reduced by mild limitations in her ability to maintain concentration,

persistence, or pace. (Tr. 19-20).[2] Plaintiff contends that the ALJ's reasons for rejecting the opinion of her treating physician, Dr. Cox, are not supported by substantial evidence.

On April 15, 2005, Carter Cox, M.D. completed a Medical Statement Regarding Illnesses, Physical Abilities and Limitations for Social Security Disability Claim. (Tr. 193). He noted diagnoses of chronic bipolar disorder; osteoarthritis of the knees, back, and ankles; hypertension; and chronic obstructive lung disease. *Id*. Cox indicated that plaintiff could stand for 15 minutes at a time and sit for 30 minutes at a time. *Id*. She could work for one hour per day, occasionally lift five pounds, and frequently lift nothing. *Id*. She also needed to occasionally elevate her legs during the work day. *Id*. Cox opined that plaintiff was unable to function in a stressful work environment due to her bipolar disorder. *Id*. She was unable to perform manual labor due to her osteoarthritis. *Id*.

Obviously, the limitations recognized by Dr. Cox are inconsistent with the ALJ's residual functional capacity assessment, and if credited in their entirety, would undermine the ALJ's Step Four determination.[3] Accordingly, the ALJ endeavored to discount Dr. Cox's assessment. In this

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3] The Commissioner now contends that Dr. Cox's assessment was not a medical opinion because it addressed an issue reserved to the Commissioner. (Def. Memo., pgs. 2-3). However, only physician's statements that a claimant is "disabled" or "unable to work" are not afforded any special significance. 20 C.F.R. § 404.1527(e); *see also, Frank v. Barnhart*, 326 F.3d 618,

5

context, the Fifth Circuit has held that

> "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990).
>
> Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id.; see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

The instant ALJ discounted Dr. Cox's opinion because it was internally inconsistent and unsupported by the objective medical evidence and plaintiff's activities of daily living. (Tr. 17-18). Specifically, the ALJ found that Dr. Cox's determination that plaintiff could perform occasional postural activities and frequent hand manipulations was inconsistent with his assigned exertional limitations and inability to work more than one hour per day. (Tr. 17). However, simply because someone can occasionally bend or stoop and frequently manipulate the hands, does not mean that she must be able to stand, walk, or sit for up to six hours a day. There is no inherent inconsistency

---

620 (5th Cir. 2003). Dr. Cox's opinion addressed the limitations imposed by plaintiff's impairments. Medical opinions addressing what the claimant can do despite her impairments *are* considered by the Commissioner. 20 C.F.R. § 404.1527(a)(2).

between these findings.

The ALJ further found that Dr. Cox's limitations were inconsistent with plaintiff's activities of daily living. The ALJ noted that plaintiff's friend, Annette Allen, testified that they went shopping together. However, Ms. Allen also testified that plaintiff usually has to get "the buggy" when she exits the car, and has to call for assistance so someone can carry her groceries to the car and put them inside for her. (Tr. 245). Moreover, despite evidence that plaintiff cared for her sick father, she typically had to lie down and rest about three to three and one-half hours per day. (Tr. 231, 244).

It is apparent that in lieu of Dr. Cox's assessment, the ALJ credited the findings of a May 26, 2004, consultative examination administered by orthopedic surgeon, Robert Holladay, M.D. (Tr. 18, 188-191). Dr. Holladay reported that plaintiff complained of bilateral knee and ankle pain and pain in her feet and back. *Id*. He noted generalized swelling around both ankles. *Id*. Straight leg raising test was negative bilaterally. *Id*. Her sensation was intact in all dermatones. *Id*. Jones ambulated with a slow, guarded gait using a cane on the right side. *Id*. She was unable to perform heel and toe gait. *Id*. Knee x-rays showed mild to minimal narrowing of the medial compartment bilaterally, but no osteophyte formation. *Id*. X-rays of the ankles showed no evidence of narrowing of the mortise of either ankle. *Id*. There were some mild changes consistent with degenerative changes. *Id*. Holladay diagnosed morbid obesity, bipolar syndrome, early chondromalacia of both knees, and bilateral ankle pain. *Id*. Holladay stated that there were no abnormal objective findings. *Id*. Plaintiff's obesity greatly contributed to her knee and ankle complaints. *Id*. Holladay opined that she was physically capable of sitting, standing, or walking for at least six hours in an eight hour day. *Id*. She could use her upper extremities to grasp, for fine manipulation, pushing and pulling, and overhead reaching. *Id*. However, she should avoid a lot of climbing, crawling, or stooping. *Id*.

He further opined that her cane was not medically necessary. *Id*.

While under certain circumstances, an ALJ may reject the opinion of a treating physician and favor the findings of a consultative examiner, the ALJ's rationale for doing so must be supported by substantial evidence. In this case, the ALJ's reasons for rejecting Dr. Cox's opinion are not well-supported. Moreover, Dr. Holladay's findings are undermined by other record evidence. For instance, he did not have the benefit of subsequent diagnostic tests which confirmed that Jones suffered from advanced osteoporosis and osteoarthritis.[4] Additionally, medical notes from August 29, 2003, reflect that plaintiff's ankle problems were likely due to a circulatory problem, rather than an orthopedic problem. (Tr. 117). This may help explain why Dr. Holladay, an orthopedist, did not discern any abnormal objective findings.

In sum, the ALJ's explanation for eschewing Dr. Cox's evaluation is not supported by substantial evidence. The continued vitality of Cox's assessment materially undermines the ALJ's residual functional capacity assessment.[5]

Issues 2-5

Plaintiff contends that the ALJ made several procedural errors in his consideration of plaintiff's mental impairment. When evaluating the severity of mental impairments, the regulations require that a psychiatric review technique form be completed during the initial and reconsideration

---

[4] An October 13, 2004, x-ray of the knees denoted osteoarthritis. (Tr. 199). Lumbar spine x-rays suggested osteoporosis. *Id*. A November 18, 2004, bone density study confirmed that plaintiff suffered from advanced osteoporosis in the lumbar spine and mild osteopenia. (Tr. 194).

[5] This does not mean that upon remand the ALJ is obliged to credit Dr. Cox's findings. Indeed, further development may provide valid bases for discounting Dr. Cox's opinion. For example, the ALJ may definitively determine that Dr. Cox is not a treating physician. (*See*, Tr. 17, n 1). Moreover, the ALJ may re-contact Dr. Cox and ask him to explain the rationale for his limitations – particularly Jones's inability to work more than one hour per day.

phases of the administrative review process. 20 C.F.R. § 1520a(e). The psychiatric review technique rates the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 1520a(c). The ALJ must incorporate the pertinent findings and conclusions of the psychiatric review technique into his decision. *Id*. However, an ALJ's failure to complete a psychiatric review technique form is not a substantive error requiring remand, – provided that the ALJ's decision is adequately supported by the record, with due consideration of the different aspects of the claimant's mental condition. *McGehee v. Chater*, 1996 WL 197435 (5th Cir. Mar. 21, 1996) (unpublished) (citing, *Maya v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1984)).

In this case, a non-examining agency medical examiner, William Berzman, Ph.D., completed a psychiatric review technique on April 12, 2004. (Tr. 170-183). He indicated that plaintiff suffered from bipolar syndrome. *Id*. He further found that she had mild limitations in maintaining concentration, persistence or pace and activities of daily living. *Id*. However, he indicated that Jones experienced moderate difficulties in maintaining social functioning. *Id*.

The ALJ determined that Jones's mental limitations were not as severe as Berzman found. (Tr. 18). He relied on more recent mental health treatment records to substantiate his decision to essentially reject Dr. Berzman's limitations. However, the subsequent treatment records were no different than earlier records which documented a longstanding, well-controlled bipolar disorder. (*See e.g.*, Tr. 112-113, Tr. 167-169). By essentially finding that plaintiff's mental impairment caused no more than mild limitations, the ALJ ran afoul of the regulations which dictate that generally a mental impairment is not severe if the functional limitations are no more than mild. 20 C.F.R. § 1520a(d)(1). The ALJ also failed to make specific findings regarding the degree of limitation for each functional area. 20 C.F.R. § 1520a(e)(2). Nonetheless, procedural perfection in administrative

9

proceedings is not required; an administrative decision will not be reversed unless substantial rights of a party have been affected. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Here, Jones's bipolar disorder was a longstanding impairment that she had coped with for 21 years. (*See*, Tr. 112-113). She has not suffered a relapse since 1994. (Tr. 228). During this period, she was able to perform her past relevant work as a college financial aid clerk despite the impairment. There is no evidence that her mental impairment subsequently worsened or that it caused new limitations that she did not experience while working. Thus, the ALJ's failure to document her mental impairment and compare the related limitations with the demands of her past relevant work is harmless. *See, Johnson v. Bowen*, 864 F.2d 340, 347-348 (5th Cir. 1988) (citation omitted) (ALJ's determination that plaintiff could perform past relevant work despite mental impairment is supported by substantial evidence where plaintiff worked for several years with the impairment).[6] Nonetheless, because this matter is being reversed on other grounds, these issues may be addressed upon remand. *See*, discussion, *supra*.

For the foregoing reasons, the undersigned finds that the ALJ's residual functional capacity assessment is not supported by substantial evidence, and that this error materially affected the Commissioner's disability determination. Accordingly,

IT IS RECOMMENDED that the matter be REVERSED and REMANDED for further proceedings consistent herein.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written

---

[6] The ALJ determined that plaintiff could return to her past relevant work as a college financial aid clerk not only as she performed the job, but as the job is generally performed in the national economy. (Tr. 19-20). Only the ALJ's latter finding would be implicated by his failure to sustain the limitations on social functioning recognized by Dr. Berzman. (*See*, Tr. 184-187).

objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, on 20th day May, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

11